I6jdclac

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           15 Cr. 0866(WHP)

5    ROGER THOMAS CLARK,

6              Defendant.

7    ------------------------------x

8
                                           June 19, 2018
9                                          5:10 p.m.

10
     Before:
11
                    HON. WILLIAM H. PAULEY III,
12
                                           District Judge
13

14                          APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:  MICHAEL NEFF
17        Assistant United States Attorney

18   STEPHANIE CARVLIN
          Attorney for Defendant
19

20        – also present –

21   SA Samad Shahrani, FBI

22   SA Gary Alford, IRS

23   Tyler Good-Cohn, Government Intern

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

I6jdclac

1          THE CLERK:  United States of America versus Roger

2     Thomas Clark.  Appearances.

3          MR. NEFF:  Good afternoon, your Honor.  Michael Neff

4     for the government, joined at counsel table by FBI Special

5     Agent Sam Shahrani, IRS Special Agent Gary Alford, and Tyler

6     Good-Cohn, a summer intern in our office.

7          THE COURT:  All right.  Good afternoon, Mr. Neff.

8          MS. CARVLIN:  Good afternoon, your Honor.  Stephanie

9     Carvlin for Roger Thomas Clark, who is seated next to me.

10          THE COURT:  Good afternoon to you, Ms. Carvlin.

11          I note the presence of the defendant at counsel table.

12          I understand that this matter is here for arraignment.

13          MR. NEFF:  That is correct, your Honor.

14          THE COURT:  All right.  So why don't we begin with

15     that.

16          Mr. Clark, would you stand, sir.

17          Are you the defendant, Roger Thomas Clark?

18          THE DEFENDANT:  I am.

19          THE COURT:  Have you seen a copy of the Superseding

20     Indictment in this case?

21          THE DEFENDANT:  I have.

22          THE COURT:  Have you discussed it with your attorney,

23     Ms. Carvlin?

24          THE DEFENDANT:  Yes, I have.

25          THE COURT:  Do you waive my reading the indictment

I6jdclac

word for word here in open court?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  How do you plead to the charges by the United States against you in the Superseding Indictment, guilty or not guilty?

THE DEFENDANT:  Not guilty of all charges, your Honor.

THE COURT:  Very well.  You may be seated.

Mr. Neff, briefly, for the benefit of the Court and the defendant, would you describe the nature of the charges and how the defendant comes to be here today in a case that was filed in 2015?

MR. NEFF:  Yes, your Honor.  If I may take those in reverse order?

THE COURT:  That is fine.

MR. NEFF:  The defendant was arrested in Thailand in December of 2015.  He contested extradition in the Thai justice system.  Ultimately, in April of this year a final order of extradition was issued by a Thai appeals court, and the defendant was extradited here to the United States late last week, arriving in the Southern District on Friday, at which point he was presented before Judge Gorenstein.

The nature of the charges, substantively, stem from the defendant's role in the Silk Road, which, as your Honor may already be aware, in brief, was a massive online black market where hundreds of kilograms of drugs were sold as well as other

I6jdclac

contraband, including computer hacking tools and fake id.s.
The charges include accusations about each of those types of
illegality -- narcotics, computer hacking, fake id.s -- as well
as distribution of narcotics over the Internet.

In terms of the allegations about the defendant's
role, we allege that the defendant was a trusted confidante and
senior advisor to the individual who owned and operated the
Silk Road black market.  That individual, the owner, his name
is Ross Ulbricht.  The defendant fulfilled various roles in his
sort of overall role as a senior advisor, which included hiring
and managing a staff of computer programmers who helped develop
the website's infrastructure.  The defendant was also
responsible for gathering information on law enforcement's
attempts or efforts to investigate Silk Road, and the defendant
advised Ulbricht on all aspects of the website, including about
the use of violence to protect their drug empire.

Would it be useful to pivot to discovery?

THE COURT:  Yes.

MR. NEFF:  If I may, your Honor, there are I guess
three things I would like to do in terms of discovery:  One,
just summarize the nature and volume, what it consists of; two,
tell the Court the limited amount that has been produced
already; and, three, update the Court as to the communications
that we have had to date with the MDC in Brooklyn, which is
prepared to make significant accommodations to ensure that

I6jdclac

1    Mr. Clark has expeditious access to the voluminous nature of

2    the discovery in this case.

3          So, first, in terms of what discovery consists of,

4    it's ready to be produced now.  It is voluminous.  It is

5    approximately 7 to 8 terabytes.  It includes copies of at least

6    three Silk Road servers.  It includes a complete image of the

7    Silk Road website at the time of seizure.  Silk Road was in

8    operation from early 2011 until late 2013.  Discovery includes

9    photographs of the website.

10          Importantly, it includes items from Ross Ulbricht's

11   laptop.  Ulbricht was arrested while he was logged into his

12   laptop so he was caught redhanded, and on that laptop are a

13   number of documents of interest to this case, including chats

14   with Mr. Clark, travel records for Mr. Clark, scanned encrypted

15   copies of Mr. Clark's Canadian passport, as well as encrypted

16   copies of identification documents for other Silk Road

17   employees and staff.

18          Discovery also includes documentary evidence such as

19   search warrants for devices recovered from Mr. Clark's

20   residence when he was arrested in Thailand back in late 2015.

21   Discovery also includes documents from other countries,

22   including the UK.

23          I should note that we anticipate receiving documents

24   from Thailand in the very near future and will promptly produce

25   that upon receipt.

I6jdclac

1        There is also a smaller amount of physical evidence,

2   including drugs purchased from the Silk Road in an undercover

3   capacity as well as the lab reports that accompany them.

4   Another item of physical evidence is Mr. Clark's passport

5   recovered from him in connection with his extradition.  That

6   passport matches the passport that was found on Ulbricht's

7   laptop with one exception, which is the passport recovered from

8   Mr. Clark has a signature, the one on Ulbricht's laptop does

9   not.

10        I should note that Mr. Clark did make post-arrest

11   statements in Thailand after he was Mirandized.  Those have

12   already been produced to defense counsel, along with the signed

13   Miranda forms.  And then there would also be some law

14   enforcement reports contained within the discovery.

15        As previewed, a modest amount of discovery has already

16   been produced earlier today.  Those include post-arrest

17   statements made in Thailand, Miranda forms, as well as a binder

18   containing certain documents of interest within the much larger

19   universe that we expect to produce soon.

20        We have informed defense counsel that upon receipt of

21   two 4-terabyte drives, we will promptly copy our copy of the

22   discovery and get that to defense counsel promptly.

23        Third, in terms of arrangements made for the

24   defendant's expeditious review at the MDC in Brooklyn, I had a

25   lengthy conversation earlier with counsel there.  They are

I6jdclac

1    willing to do for Mr. Clark what they do extremely, extremely

2    rarely but what they did in the Ulbricht case, which is mindful

3    of the voluminous nature of the discovery, they are prepared to

4    essentially give him access seven days a week to a laptop that

5    has been loaded up with the discovery materials.  That is not

6    the norm.  They made very clear that administratively that

7    creates certain additional burdens for them but they have

8    committed to us that they will do that.  And the hours -- it is

9    a considerable number of hours and it is access seven days per

10   week.

11          Just by way of comparison, typically, so when it is

12   not the exceptional case, my understanding is when a defendant

13   needs to review discovery on a drive, they typically get access

14   three hours or so per week, not seven days per week, but they

15   have committed to doing that.  So I have informed defense

16   counsel that if she can provide us with a laptop, we will

17   either load up the laptop or load up a second set of drives and

18   together we can get that over to the MDC so that the defendant

19   can begin reviewing the voluminous materials.

20          THE COURT:  All right.  Thank you for that report,

21   Mr. Neff.

22          Ms. Carvlin, how much time would you like to review

23   these matters with your client in order to determine what

24   motions, if any, you would like to make?

25          MS. CARVLIN:  Boy, Judge, that is a difficult question

I6jdclac

1   to answer standing here.  Obviously, when I hear 7 to 8

2   terabytes, that leads to the thought of months and months and

3   months of dedicated activity.  Obviously, I'm very appreciative

4   of the MDC's willingness to accommodate in this case, and the

5   idea that Mr. Clark will have access to the materials on his

6   own at pretty much whenever he would like is going to be hugely

7   helpful but I also have to review them.

8           So what I would suggest, Judge, is coming back to the

9   Court perhaps in the fall.  By then I will have an idea of what

10  progress I have been making.  I will also -- I'm confident I

11  can work with Mr. Neff to determine -- excuse me, to identify

12  sort of the areas to begin with.  So I would say three months

13  would be a good starting point.

14          THE COURT:  All right.  September 20 at 12 noon.

15          MS. CARVLIN:  That is good, your Honor.  Thank you.

16          THE COURT:  All right.  And, Ms. Carvlin, what is the

17  defendant's view concerning the exclusion of time between now

18  and September 20?

19          MS. CARVLIN:  Your Honor, I believe that it's

20  appropriate to exclude time.  I am asking for the time to

21  review the discovery.  The government is able to produce it

22  immediately so the delay will be on my part, the willingness

23  to -- or the need to review it as well as review it with my

24  client.

25          THE COURT:  All right.  Since this continuance is due

I6jdclac

1    to the defendant's need to review very voluminous discovery

2    from the government, I prospectively exclusive the time from

3    today until September 20, 2018 from Speedy Trial Act

4    calculations.  I find that this continuance serves to ensure

5    the effective assistance of counsel and prevents any

6    miscarriage of justice.  Additionally, I find that the ends of

7    justice served by such a continuance outweigh the best

8    interests of the public and Mr. Clark in a speedy trial

9    pursuant to 18 U.S.C., Section 3161.

10            Are there any other issues that we can address this

11   afternoon?

12            MR. NEFF:  Not from the government, your Honor.  Thank

13   you.

14            MS. CARVLIN:  No, your Honor.  Thank you.

15            THE COURT:  Very well.  Thank you for coming in.  Have

16   a good afternoon.

17            THE CLERK:  All rise.

18            (Adjourned)

19

20

21

22

23

24

25