J1PHClaC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                        15 Cr. 866 (WHP)

ROGER THOMAS CLARK,

                                    Conference
          Defendant.

------------------------------x

                                 New York, N.Y.
                                 January 25, 2019
                                 12:09 p.m.

Before:

                HON. WILLIAM H. PAULEY III,

                                District Judge

                      APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
MICHAEL NEFF
     Assistant United States Attorney

STEPHANIE CARVLIN
JACOB MITCHELL
     Attorneys for Defendant

ALSO PRESENT:   SAMAD SHAHRANI, Special Agent FBI
                 GARY ALFORD, Special Agent IRS

J1PHClaC

1          (Case called)

2          MR. NEFF:  Good afternoon, your Honor.  Michael Neff,

3   for the government.  I'm joined at counsel table by IRS Special

4   Agent Gary Alford and FBI Special Agent Samad Shahrani.

5          THE COURT:  All right.  Good afternoon, gentlemen.

6          MS. CARVLIN:  Good afternoon, your Honor.  Stephanie

7   Carvlin, for Roger Clark.  At counsel table with me is my

8   associate Jacob Mitchell.

9          THE COURT:  All right.  Good afternoon to both of you,

10   and I note the presence of Mr. Clark at counsel table.

11          What's the status of this matter, Mr. Neff?

12          MR. NEFF:  Yes, your Honor.  We were last before the

13   Court in September.  Since then the government has produced a

14   small amount of supplemental discovery.  First, in October we

15   produced to the defense the responsive materials from the

16   Ulbricht laptop.  We had previously produced to defense counsel

17   the entirety of that laptop.  This was simply isolating the

18   responsive materials.  And then, secondly, on Monday of this

19   week, we produced to the defense prison records, including the

20   defendant's phone calls and emails, along with the government's

21   admitted trial exhibits from the trial of Ross Ulbricht before

22   Judge Forrest.

23          The government's investigation is ongoing.  I want to

24   note I learned this week of certain online forum posts that we

25   believe are attributable to the defendant.  We are in the

J1PHClaC

1    process of gathering those materials and expect to produce them

2    next week, which I informed Ms. Carvlin of before today's

3    conference.

4          I should also note one other significant update since

5    we were last before the Court, which is that in October the

6    government dropped off at the MDC where the defendant is housed

7    presently a laptop as well as, I believe, two 4 terabyte drives

8    with discovery.  All of those materials, obviously, were made

9    safe before they were dropped off at the MDC.  I believe those

10   are, from our perspective, the primary updates since we were

11   last before your Honor.

12         THE COURT:  Ms. Carvlin.

13         MS. CARVLIN:  Yes, your Honor.  I do have some updates

14   as well.  We have been, the defense team has been, going

15   through the material.  When we were here last, we were aware

16   that there was going to be somewhere between 8 and 10 terabytes

17   of discovery, and I was obviously aware that was a massive

18   amount of discovery.  What's become apparent over the last

19   several months as we've begun to review that material is the

20   method in which it exists, it is images of, according to the

21   government, computer servers.  So as opposed to a file that

22   might exist on a normal computer where you would click a folder

23   and then a file and that would pop up, the way that these

24   documents are imagined, you have to make your way all the way

25   down a tree.  So you might click ten different times until you

J1PHClaC

1    get to one of 10 million documents.  Then you have to take that

2    document, extract it, mount it in a program that can view that

3    document.

4          So what's new information since September to us is the

5    extent of the task.  I should divide review into two parts.

6    One is the defense review in terms of the attorneys and

7    paralegal, and the other is Mr. Clark's review.  Mr. Clark is

8    very involved in his case.  He wants to review every bit of

9    material.  I want him to review every bit of material.  He did

10   get a computer finally because of -- through everybody's best

11   efforts.  The government has been very helpful in terms of

12   helping us try to figure out how to view this material and get

13   this material to Mr. Clark, but through everybody's best

14   efforts, Mr. Clark had the first access to the computer server

15   information, I think, about November 15.  I think Adam Johnson,

16   the head of the legal department at the MCC, got the computer

17   over to the MDC, then the MDC had to do whatever they had to do

18   through their internal paperwork, and then Mr. Clark has to

19   have permission to go to this separate room.  That was working

20   fairly well until the government shutdown.

21         Since the government shutdown, I believe Mr. Clark

22   told me three weeks to today, in order for him to review this,

23   I provided through the government a laptop for him, but that is

24   kept in a separate part of the MDC.  It's in a separate

25   building.  There has to be an officer dedicated to take

J1PHClaC

1    Mr. Clark over to view that.  The MDC does not feel that it's

2    able to do that now given whatever their staffing issues are.

3    I don't know, obviously, better than anyone else how long that

4    will continue.

5         All this by way of saying that I am asking the Court

6    for more time.  I would like to -- what I would propose is

7    coming back in a couple months, maybe three months.  By then --

8    oh, the good part, Judge, I have very good news which I have

9    omitted, which is we have figured out through the Office of

10   Defender Services how to make this material viewable in a more

11   reasonable format.  So it would be more akin to looking at

12   documents like you normally would a PDF or a Word doc or

13   something like that.  They have provided us with hard drives

14   with these mechanisms on them.

15        Also what will be able to happen now is that searches

16   can be run, word searches, and that will obviously facilitate a

17   targeted or smart view of the material.  They have made those

18   available to us with one or two exceptions that we're still

19   working on some technical issues with them about.  I have to

20   get that into the MDC, which means going through the government

21   and then going through the MDC.  I don't know if that's --

22   typically, it takes a month.  I don't know why, but typically

23   stuff -- to make this happen because it's not the normal thing

24   that the MDC does.

25        All this by way of saying I'm going to ask you for

J1PHClaC

1    more time.  Mr. Clark believes that he will be able to review

2    all the material as it now exists by September, and all of the

3    material.  This may be quicker because of this new mechanism.

4    I hope it will be substantially quicker.

5              This case also, Judge, is unique, all cases are

6    unique, but what's different about this case is it's as if this

7    material, according to the government, is a live view of every

8    moment of a multi-year conspiracy.  That's essentially what the

9    server can provide.  So it's not material that can be ignored.

10   It's not a situation where it's a multi-defendant drug trial

11   and there are pole cameras, but my client is only supposedly on

12   one or two days.

13             As I said, I think it's a unique situation.  We are

14   working hard to get through it.  I think we're making good

15   progress.  I think we've come up with a mechanism that will

16   allow us to review it more quickly.  The wild card in all this

17   is, obviously, what will Mr. Clark's ability to view the

18   material be in terms of what the MDC is able and willing to

19   provide?

20             What I would suggest is coming back, and I would ask

21   for three months to come back.  Don't set a motion schedule

22   today.  Come back in three months.  I think three months from

23   now I'll be in a better position to tell you what we have and

24   haven't been able to do.  That's sort of where we are.

25             THE COURT:  But we have a trial date of September 23.

J1PHClaC

1          MS. CARVLIN:  We do, Judge, and I would imagine that

2     I'll be asking you to change the trial date.  As I said,

3     Mr. Clark very much wants to go through all the material.  He

4     has, my understanding -- and I believe him when he says because

5     he's able to discuss it intelligently -- he's been diligent

6     about reviewing when he's able to review.  I think we've done

7     what we can to get this material in to him, but it's

8     time-consuming.  It requires, as I said, dealing with the MDC

9     in a way they're not comfort or accustomed to doing things, and

10    hopefully now we will be able to speed that process up.

11         But I do think that his review of the material, what

12    he shared with me so far, is vital to my understanding of the

13    material and to his ability to participate in the way that he

14    wants to participate.  I'm pretty sure in all the years I've

15    been practicing here I've never asked the judge to change a

16    trial date, but that's the situation I'm in.

17         THE COURT:  Well, look, I'm going to put this matter

18    over for about two months, and I'm going to make an adjustment

19    in the trial date now.

20         MS. CARVLIN:  Could I ask you, but before you do that,

21    your Honor, Mr. Clark very much has things that he wants the

22    Court to know about why his ability to review the material is

23    vital, things that he's already discovered, and that's not

24    something that we're able to do in front of the government

25    because it would disclose defense strategy.  I think before you

J1PHClaC

```
1    set a date, Mr. Clark would like me to submit an ex parte
2    letter to your Honor explaining a little more about exactly --
3    that would affect the trial date, essentially.
4              THE COURT:  I'll set the matter down for another
5    conference on March 22 at 12 noon, at which point I anticipate
6    fixing a motion schedule in the case and, to the extent
7    necessary, making some adjustment in the trial date, but I'm
8    going to try this case before the end of the year.
9              What can the government do with respect to getting
10   Mr. Clark access to the laptop?
11             MR. NEFF:  Your Honor, I spoke with Nicole McFarland,
12   who's counsel at the MDC, I believe head of the legal
13   department there.  I spoke with her this week.  She confirmed
14   that, as Ms. Carvlin stated, at present, unfortunately, the
15   physical space where the laptop is housed is not presently
16   available due to what I understand to be staffing constraints
17   imposed or connected to the current government shutdown.  She
18   assured me that they are aware of the problem; they are working
19   on trying to fix it.  I can certainly reach out to her again
20   and make quite clear -- I already did, but I can reiterate that
21   it's coming from the Court that this is very important.
22   Candidly, I'm not certain what else I can do at this point
23   other than reiterate the seriousness of the matter and that
24   it's coming from your Honor.  If Ms. Carvlin or the Court has
25   suggestions as to other steps, I'm more than happy to take
```

J1PHClaC

1   them.  This is really important.  I'm just not sure what else I

2   can do.

3           THE COURT:  Ms. Carvlin, do you have any suggestions?

4           MS. CARVLIN:  I don't have suggestions in general or

5   in this specific situation about how to get the MDC to do

6   things that they don't want to do, frankly, Judge.  I mean, I

7   think the most potent mechanism or force here would be

8   Mr. Neff, I believe, saying that it's exactly what he said he

9   would say, which is that you are insistent that Mr. Clark be

10   given access to this.

11           THE COURT:  All right.  I'm going to reach out to Adam

12   Johnson myself and speak to him and see what can be done.

13           Am I correct to understand that over the last three

14   weeks, then, the defendant has had no access to the laptop?

15           MS. CARVLIN:  That's my understanding from Mr. Clark,

16   your Honor.

17           MR. NEFF:  If useful, certainly as of earlier this

18   week, he does not have access.  The time period that I was told

19   is slightly shorter, but I think there is no dispute as to the

20   fact that, in light of the shutdown, he does not presently have

21   access and that has been the case for at least ten days and

22   perhaps more like 20.

23           THE COURT:  All right.  Ms. Carvlin, if you're going

24   to make an *ex parte* submission to me on behalf of your client

25   in connection with the trial date, I suggest you submit

J1PHClaC

1    something to me no later than March 19 --

2             MS. CARVLIN:  Yes, your Honor.

3             THE COURT:  -- so that when we get together on

4    March 22, I'll be fully informed of the defendant's position.

5             MS. CARVLIN:  Yes, I will.

6             THE COURT:  All right.  What's the defendant's view

7    concerning the exclusion of time between now and March 22?

8             MS. CARVLIN:  I believe it's appropriate, your Honor,

9    so Mr. Clark can review the discovery that the government has

10   already provided and I can do that as well.

11            THE COURT:  Since this continuance is due to ongoing

12   needs to review voluminous discovery in the case, I

13   prospectively exclude the time from today until March 22, 2019,

14   from Speedy Trial Act calculations.  I find that this

15   continuance serves to ensure the effective assistance of

16   counsel and prevents any miscarriage of justice.  Additionally,

17   I find that the ends of justice served by such a continuance

18   outweigh the best interests of the public and Mr. Clark in a

19   speedy trial pursuant to 18 U.S.C. Section 3161.  Certainly

20   note, however, that Mr. Clark has been in custody either here

21   or in Thailand for more than three years, and I'm determined to

22   see that this doesn't go on ad nauseam.

23            MS. CARVLIN:  Understood, your Honor.

24            THE COURT:  Have a good afternoon.

25            (Adjourned)