K1u1clap

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          15 Cr. 866 (WHP)

5    ROGER THOMAS CLARK,

6                   Defendant.             Plea

7    ------------------------------x

8                                          New York, N.Y.
                                           January 30, 2020
9                                          3:11 p.m.

10

11   Before:

12              HON. WILLIAM H. PAULEY III,

                                           District Judge
13

14                        APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:  MICHAEL D. NEFF
17        VLADISLAV VAINBERG
          Assistant United States Attorneys
18
     STEPHANIE M. CARVLIN, ESQ.
19        Attorney for Defendant

20

     ALSO PRESENT:  GARY ALFORD, Special Agent, Supervisory, IRS
21                   MARK RUBINS, Detective/Task Force Officer, FBI

22

23

24

25

K1u1clap

1        (Case called)

2        THE DEPUTY CLERK:  Appearances.

3        MR. NEFF:  Good afternoon, your Honor.  Michael Neff

4   and Vlad Vainberg for the government, and we are joined at

5   counsel table by supervisory special agent Gary Alford from the

6   IRS and task force officer Mark Rubins.

7        THE COURT:  All right.  Good afternoon, gentlemen.

8        MS. CARVLIN:  Good afternoon, your Honor.  Stephanie

9   Carvlin for Roger Clark.  At counsel's table with me is

10  Mr. Clark.

11       THE COURT:  Good afternoon to you, Ms. Carvlin.  I

12  note the presence of the defendant, Roger Thomas Clark, at

13  counsel table.

14       Ms. Carvlin, I'm informed that the defendant has an

15  application.  What is that application?

16       MS. CARVLIN:  That application, your Honor, is to

17  withdraw his previously entered plea of not guilty and enter a

18  plea of guilty to a lesser included offense of Count One.

19       THE COURT:  And is this plea pursuant to a plea

20  agreement?

21       MS. CARVLIN:  It is, your Honor.

22       THE COURT:  The record should reflect that a plea

23  agreement has been handed up to me for inspection.

24       Ms. Carvlin, prior to the commencement of this

25  proceeding, did you review with your client an Advice of Rights

K1u1clap

1    form?

2              MS. CARVLIN:  I did, your Honor.

3              THE COURT:  And did he sign it in your presence?

4              MS. CARVLIN:  He did, your Honor.

5              THE COURT:  And did you sign it as his attorney?

6              MS. CARVLIN:  I did.

7              THE COURT:  The record should reflect that an Advice

8    of Rights form has been marked as Court Exhibit 1 and handed to

9    me for inspection.

10             So at this time I'm going to ask my deputy to

11   administer the oath to the defendant.

12             THE DEPUTY CLERK:  Please stand and raise your right

13   hand.

14             (Defendant sworn)

15             THE COURT:  Mr. Clark, do you understand, sir, that

16   you're now under oath and that if you answer any of my

17   questions falsely, your false or untrue answers may later be

18   used against you in another prosecution for perjury or making a

19   false statement?

20             THE DEFENDANT:  I do.

21             THE COURT:  Very well.  Please be seated.

22             Mr. Clark, for the record, what is your full name?

23             THE DEFENDANT:  Roger Thomas Clark.

24             THE COURT:  And how old are you?

25             THE DEFENDANT:  58.

K1u1clap

1          THE COURT:  And if you'd get a little closer to the

2     microphone.

3          How far did you go in school, sir?

4          THE DEFENDANT:  High school.

5          THE COURT:  And are you able to read, write, speak,

6     and understand English?

7          THE DEFENDANT:  I am.

8          THE COURT:  Now are you now or have you recently been

9     under the care of a doctor or a psychiatrist?

10          THE DEFENDANT:  No.

11          THE COURT:  Have you ever been treated or hospitalized

12     for any mental illness or any type of addiction, including drug

13     or alcohol addiction?

14          THE DEFENDANT:  No.

15          THE COURT:  In the past 24 hours have you taken any

16     drugs, medicines, or pills, or have you consumed any alcohol?

17          THE DEFENDANT:  No.

18          THE COURT:  Is your mind clear today?

19          THE DEFENDANT:  It is.

20          THE COURT:  Are you feeling all right today?

21          THE DEFENDANT:  I am.

22          THE COURT:  Are you represented by an attorney here

23     today?

24          THE DEFENDANT:  Yes, Ms. Carvlin.

25          THE COURT:  And Ms. Carvlin, do you have any doubt as

K1u1clap

1    to your client's competence to plead at this time?

2                    MS. CARVLIN:  I do not, your Honor.

3                    THE COURT:  All right.  Now, Mr. Clark, your attorney

4    Ms. Carvlin has informed me that you wish to enter a plea of

5    guilty.  Do you wish to enter a plea of guilty?

6                    THE DEFENDANT:  I do, your Honor.

7                    THE COURT:  Have you had a full opportunity to discuss

8    your case with your attorney and to discuss the consequences of

9    entering a plea of guilty?

10                   THE DEFENDANT:  Yes, we have.

11                   THE COURT:  Are you satisfied with your attorney,

12   Ms. Carvlin, and her representation of you in this matter?

13                   THE DEFENDANT:  I am.

14                   THE COURT:  On the basis of Mr. Clark's responses to

15   my questions and my observations of his demeanor here in my

16   courtroom this afternoon, I find that he's fully competent to

17   enter an informed plea at this time.

18                   Now before I accept any plea from you, Mr. Clark, I'm

19   going to ask you certain questions.  My questions are intended

20   to satisfy me that you wish to plead guilty because you are

21   guilty and that you fully understand the consequences of your

22   plea.  I'm going to describe to you certain rights that you

23   have under the Constitution and laws of the United States,

24   which rights you'll be giving up if you enter a plea of guilty.

25   Please listen carefully.  If you do not understand something I

1  am saying or describing, then stop me, and either I or your

2  attorney, Ms. Carvlin, will explain it to you more fully.  Do

3  you understand this, sir?

4          THE DEFENDANT:  I do.

5          THE COURT:  All right.  Under the Constitution and

6  laws of the United States, you have a right to a speedy and

7  public trial by a jury on the charges against you which are

8  contained in the superseding indictment.  Do you understand

9  that?

10          THE DEFENDANT:  I do.

11          THE COURT:  And if there were a trial, you would be

12  presumed innocent, and the government would be required to

13  prove you guilty by competent evidence beyond a reasonable

14  doubt at trial in order to convict you.  Do you understand

15  that?

16          THE DEFENDANT:  I do.

17          THE COURT:  You would not have to prove that you were

18  innocent at a trial.  Do you understand that?

19          THE DEFENDANT:  I do.

20          THE COURT:  If there were a trial, a jury composed of

21  12 people selected from this district would have to agree

22  unanimously that you were guilty.  Do you understand that?

23          THE DEFENDANT:  I do.

24          THE COURT:  If there were a trial, you would have the

25  right to be represented by an attorney, and if you could not

K1u1clap

afford one, an attorney would be provided to you free of cost. Do you understand that?

        THE DEFENDANT:  I do.

        THE COURT:  If there were a trial, Mr. Clark, you'd have the right to see and hear all of the witnesses against you, and your attorney could cross-examine them.  You would have the right to have your attorney object to the government's evidence and offer evidence on your behalf if you so desired, and you'd have the right to have subpoenas issued or other compulsory process used to compel witnesses to testify in your defense.  Do you understand that?

        THE DEFENDANT:  I do.

        THE COURT:  If there were a trial, you'd have the right to testify if you wanted to, but no one could force you to testify if you did not want to.  Further, no inference or suggestion of guilt could be drawn if you chose not to testify at trial.  Do you understand that?

        THE DEFENDANT:  I do.

        THE COURT:  Do you understand, sir, that by entering a plea of guilty today that you're giving up each and every one of the rights that I've described, that you're waiving those rights, and that you'll have no trial?

        THE DEFENDANT:  I do.

        THE COURT:  Do you understand that you can change your mind right now and refuse to enter a plea of guilty?

K1u1clap

1    THE DEFENDANT:  Yes, I understand.

2    THE COURT:  You do not have to enter this plea if you

3    do not want to for any reason whatsoever.  Do you understand

4    this fully, Mr. Clark?

5    THE DEFENDANT:  I do.

6    THE COURT:  Now, Mr. Clark, have you received a copy

7    of the superseding indictment?

8    THE DEFENDANT:  I have.

9    THE COURT:  And have you read it?

10   THE DEFENDANT:  Yes, I did.

11   THE COURT:  Did your attorney discuss the superseding

12   indictment with you?

13   THE DEFENDANT:  Yes, at length.

14   THE COURT:  Do you waive my reading of the superseding

15   indictment word for word here in open court?

16   THE DEFENDANT:  I do waive.

17   THE COURT:  Do you understand that Count One of the

18   superseding indictment charges that from at least in or about

19   January 2011 up to and including on or about October 2, 2013,

20   the defendant participated in a conspiracy to distribute and

21   possess with intent to distribute 1 kilogram and more of

22   mixtures and substances containing a detectable amount of

23   heroin; 5 kilograms and more of mixtures and substances

24   containing a detectable amount of cocaine; 10 grams and more of

25   mixtures and substances containing a detectable amount of

K1u1clap

1   lysergic acid diethylamide (LSD); and 500 grams and more of

2   mixtures and substances containing a detectable amount of

3   methamphetamine, its salts, isomers, and salts of its isomers,

4   in violation of Title 21 of the United States Code Sections

5   812, 841(a)(1), 841(b)(1)(A), and 846.  Do you understand that,

6   sir?

7            THE DEFENDANT:  I do understand.

8            THE COURT:  And do you understand that if you did not

9   plead guilty, the government would have to prove each and every

10  part or element of this narcotics conspiracy charged in Count

11  One by competent evidence beyond a reasonable doubt?

12           THE DEFENDANT:  I do.

13           THE COURT:  And Mr. Neff, for the benefit of the Court

14  and the defendant, would you describe the essential elements of

15  the offense charged.

16           MR. NEFF:  Yes, your Honor.  And I should note that

17  under the plea agreement, as the Court is aware, the defendant

18  will be pleading to a lesser included charge within Count One,

19  so as a result, if it's acceptable, I won't mention the

20  weights.

21           But to prove the defendant guilty of the charge in the

22  plea agreement, the lesser included offense, the government

23  would need to prove two elements beyond a reasonable doubt:

24           First, that there was an agreement between two or more

25  people to violate the narcotics laws of the United States --

1  specifically, an agreement to distribute heroin, cocaine, LSD,

2  and methamphetamine; and

3          Second, that the defendant personally joined that

4  conspiracy understanding its illegal objective; in other words,

5  understanding that it was about distributing those drugs I just

6  mentioned.

7          Those are the two elements.  And in addition, the

8  government would need to prove that venue is appropriate here

9  in the Southern District of New York, and venue, of course, is

10 by a preponderance only.

11         THE COURT:  Thank you, Mr. Neff.

12         Mr. Clark, have you listened closely to Assistant

13 United States Attorney Neff as he's described the essential

14 elements of the lesser included offense that the government is

15 willing to accept here under the terms of the plea agreement in

16 this case?

17         THE DEFENDANT:  I have.

18         THE COURT:  And do you understand, sir, that the

19 government would be required to prove those elements by

20 competent evidence beyond a reasonable doubt at trial in order

21 to convict you?

22         THE DEFENDANT:  I do.

23         THE COURT:  Now do you understand, sir, that the

24 maximum possible penalty for the lesser included offense to

25 which the government is willing to accept a plea is 20 years of

K1u1clap

1    imprisonment, followed by a maximum term of lifetime supervised

2    release, and/or a mandatory minimum term of three years of

3    supervised release, together with a maximum fine of the

4    greatest of $1 million or twice the gross pecuniary gain

5    derived from the offense or twice the gross pecuniary loss to

6    persons other than yourself resulting from the offense, and a

7    $100 mandatory special assessment?  Do you understand that?

8              THE DEFENDANT:  I do.

9              THE COURT:  Also, by the way, supervised release means

10   that you'll be subject to monitoring when you are released from

11   prison, the monitoring to be under terms and conditions which

12   could lead to reimprisonment without a jury trial for all or

13   part of the term of supervised release, without credit for time

14   previously served on postrelease supervision if you violate the

15   terms and conditions of supervised release.  Do you understand

16   that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you also understand that under the

19   terms of this plea agreement that this Court must order

20   restitution in this case to the victims of your crime?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And do you also understand that under the

23   terms of this agreement, you are admitting to the forfeiture

24   allegation and agreeing to forfeit to the United States any and

25   all property constituting or derived from any proceeds obtained

K1u1clap

|  |  |
|---|---|
| 1 | directly or indirectly as a result of the narcotics conspiracy |
| 2 | described in Count One of the indictment? |
| 3 | THE DEFENDANT:  I'm aware. |
| 4 | THE COURT:  All right.  As well as any property used |
| 5 | or intended to be used in any manner to commit or to facilitate |
| 6 | the commission of the offense alleged in Count One?  Do you |
| 7 | understand that? |
| 8 | THE DEFENDANT:  I do. |
| 9 | THE COURT:  Now are you a citizen of the United |
| 10 | States? |
| 11 | THE DEFENDANT:  I am not. |
| 12 | THE COURT:  Do you understand that another consequence |
| 13 | of pleading guilty here is that you will be deported from the |
| 14 | United States upon the completion of your term of imprisonment? |
| 15 | THE DEFENDANT:  I do. |
| 16 | THE COURT:  Now have you talked with your attorney, |
| 17 | Ms. Carvlin, about the Sentencing Guidelines? |
| 18 | THE DEFENDANT:  I have. |
| 19 | THE COURT:  And do you understand that this Court will |
| 20 | not be able to determine your sentence until after a |
| 21 | presentence report has been completed by the probation office |
| 22 | and you and the government have had a chance to challenge any |
| 23 | of the facts reported by the probation office? |
| 24 | THE DEFENDANT:  I understand. |
| 25 | THE COURT:  Do you further understand that if you're |

1  sentenced to prison, parole has been abolished and you will not

2  be released any earlier on parole?

3           THE DEFENDANT:  I do.

4           THE COURT:  Do you understand, sir, that if your

5  attorney or anyone else has attempted to estimate or predict

6  what your sentence will be that their estimate or prediction

7  could be wrong?

8           THE DEFENDANT:  I do.

9           THE COURT:  No one, Mr. Clark, not even your attorney

10  or the government, can nor should give you any assurance of

11  what your sentence will be.  Your sentence cannot be determined

12  until after the probation office report is completed and I've

13  ruled on any challenges to the report and determined what

14  sentence I believe is appropriate, giving due regard to all of

15  the factors set forth in Section 3553(a).  Do you understand

16  that?

17           THE DEFENDANT:  I do.

18           THE COURT:  Do you also fully understand that even if

19  your sentence is different from what your attorney or anyone

20  else told you it might be, or if it's different from what you

21  expect, that you'll still be bound to your guilty plea and you

22  will not be allowed to withdraw your plea of guilty?

23           THE DEFENDANT:  I do.

24           THE COURT:  Now at the commencement of this proceeding

25  I was handed this plea agreement.  Have you signed it?

K1u1clap

1          THE DEFENDANT:  I did.

2          THE COURT:  And did you read this agreement before you

3     signed it?

4          THE DEFENDANT:  I did.

5          THE COURT:  Did you discuss this agreement with your

6     attorney, Ms. Carvlin?

7          THE DEFENDANT:  Yes, we discussed it.

8          THE COURT:  Did you fully understand this agreement at

9     the time that you signed it?

10         THE DEFENDANT:  Yes, I did.

11         THE COURT:  Does this agreement constitute your

12    complete and total understanding of the entire agreement among

13    the government, your attorney, and you?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Is everything about your plea and sentence

16    contained in this agreement?

17         THE DEFENDANT:  It is.

18         THE COURT:  And has anything been left out?

19         THE DEFENDANT:  Not that I know of.

20         THE COURT:  Has anyone offered you any inducements or

21    threatened you or forced you to plead guilty?

22         THE DEFENDANT:  Not in any way.

23         THE COURT:  Now do you understand that under the terms

24    of this plea agreement you are giving up your right to appeal

25    or otherwise bring a collateral challenge to your sentence if

K1u1clap

1    this Court sentences you within or below the stipulated

2    guidelines sentence of 240 months of imprisonment?

3              THE DEFENDANT:  I do.

4              THE COURT:  And do you understand further that you're

5    also agreeing not to appeal if this Court imposes a fine that

6    is less than or equal to $1 million?

7              THE DEFENDANT:  I do.

8              THE COURT:  Do you also understand, sir, that I'm

9    completely free to disregard any position or recommendation by

10   your attorney or by the government as to what your sentence

11   should be and that I have the ability to impose whatever

12   sentence I believe is appropriate under the circumstances and

13   you will have no right to withdraw your plea?

14             THE DEFENDANT:  I do.

15             THE COURT:  Ms. Carvlin, do you know of any valid

16   defense that would prevail at trial or do you know of any

17   reason why your client should not be permitted to plead guilty?

18             MS. CARVLIN:  I know of no valid defenses that I

19   believe would prevail, your Honor, nor do I have any other

20   reason to believe that Mr. Clark should not enter this plea.

21             THE COURT:  And Ms. Carvlin, is there an adequate

22   factual basis to support this plea of guilty?

23             MS. CARVLIN:  There is.

24             THE COURT:  Mr. Neff, is there an adequate factual

25   basis to support this plea of guilty?

K1u1clap

1    MR. NEFF:  There is, your Honor.  We'd be happy to

2  make a proffer if you --

3    THE COURT:  In a few moments.  After I hear from the

4  defendant.

5    And so, Mr. Clark, at this time, please tell me what

6  you did in connection with the narcotics conspiracy to which

7  you're entering a plea of guilty.

8    THE DEFENDANT:  Between around January of 2011 up till

9  around October 2, 2013, I agreed with others to sell controlled

10  substances, including heroin, cocaine, LSD, and

11  methamphetamine, knowing that some of these drugs would be

12  distributed in New York City.

13    THE COURT:  And did you undertake this activity in

14  connection with your affiliation with an underground website

15  known as the Silk Road?

16    THE DEFENDANT:  I did.

17    THE COURT:  Did you understand that at the time that

18  you did this, what you were doing was wrong and illegal?

19    THE DEFENDANT:  I did.

20    THE COURT:  All right.  Mr. Neff, would the government

21  briefly summarize its evidence against the defendant.

22    MR. NEFF:  Yes, your Honor.  Had the matter gone to

23  trial, the government's evidence would include, among other

24  things, exhibits introduced at Ross Ulbricht's trial, seizures

25  of drugs purchased on Silk Road, undercover purchases of drugs

from the Silk Road, Silk Road server data, including from the

forum server, the marketplace server, and the Bitcoin server,

pertinent materials from Ross Ulbricht's laptop, including

chats with this defendant, travel records for this defendant,

journal entries describing how this defendant, through his

alias, was a real mentor, and a scanned encrypted copy of this

defendant's passport.  The evidence would also include this

defendant's passport itself, which was seized in connection

with his arrest and extradition from Thailand, which matched;

testimony from witnesses, including a cooperating witness who

would identify the defendant as the person who operated the

Variety Jones and Cimon account on Silk Road.  The evidence

would also include the defendant's oral and written statements

to law enforcement, as well as various documents in which the

defendant went by the name of Mongoose or a plural of Mongoose;

and in summary, this evidence would establish that Clark was

Ross Ulbricht's right-hand man for nearly two years, that Clark

advised Ulbricht about all aspects of Silk Road's operation,

including security, technical infrastructure, promotion of

sales, evading law enforcement.  Clark also managed

programmers, and Clark urged and facilitated an attempted

murder for hire of a Silk Road employee suspected of stealing

Bitcoin from the website.  The attempted murder for hire was in

fact Clark's idea, and he offered Ulbricht the services of a

potential hit man in connection therewith.

K1u1clap

1    For his various roles on Silk Road, Clark was paid

2    hundreds of thousands of dollars, and I know Mr. Clark

3    mentioned that drugs were sold in New York or delivered to New

4    York City.  We can be more specific.  There were undercover

5    purchases of drugs ordered from and delivered to this district.

6    THE COURT:  Thank you, Mr. Neff.

7    Mr. Clark, at this time I'd ask you to stand once

8    again.

9    Mr. Clark, how do you now plead to the lesser included

10   offense of conspiring to distribute and possess with intent to

11   distribute a quantity of mixtures and substances containing

12   detectable amounts of heroin, cocaine, lysergic acid

13   diethylamide (LSD), and methamphetamine, its salts, isomers,

14   and salts of its isomers, in violation of Title 21 of the

15   United States Code Sections 812, 841(a)(1), 841(b)(1)(C), and

16   846, guilty or not guilty?

17   THE DEFENDANT:  Guilty.

18   THE COURT:  Are you pleading guilty because you are

19   guilty?

20   THE DEFENDANT:  I am.

21   THE COURT:  Are you pleading guilty voluntarily and of

22   your own free will?

23   THE DEFENDANT:  I am.

24   THE COURT:  Ms. Carvlin, do you wish me to make any

25   further inquiries of your client?

K1u1clap

1          MS. CARVLIN:  No, your Honor.

2          THE COURT:  Mr. Neff, does the government wish me to

3    make any further inquiries of the defendant?

4          MR. NEFF:  No, your Honor.

5          THE COURT:  Mr. Clark, because you acknowledge that

6    you are guilty of the lesser included offense and because I

7    find you know your rights and are waiving them knowingly and

8    voluntarily and because I find your plea is entered knowingly

9    and voluntarily and is supported by an independent basis in

10   fact containing each of the essential elements of the offense,

11   I accept your guilty plea and adjudge you guilty of the

12   narcotics conspiracy to which you've just pleaded.

13         You may be seated.

14         Now the U.S. Probation Office will next prepare a

15   presentence report to assist me in sentencing you.  You'll be

16   interviewed by the probation office.  It's important that the

17   information you give the probation officer be truthful and

18   accurate because the report is important in my decision as to

19   what your sentence will be.  You and your attorney have a right

20   and will have an opportunity to examine the report, challenge

21   or comment upon it, and to speak on your behalf before

22   sentencing.

23         I'm going to set this matter down for sentencing on

24   May 14 at 11 a.m.

25         Ms. Carvlin?

K1u1clap

1      MS. CARVLIN:  Yes, your Honor.  I would ask for a

2   longer sentencing date, and the reason for that is there are

3   materials that I believe I will present to the Court in

4   mitigation with respect to sentencing that are in other

5   countries.

6          THE COURT:  How much time do you --

7          MS. CARVLIN:  I would say six months, your Honor.

8          THE COURT:  Before I fix a sentencing date six months

9   out and given this Court's intimate knowledge of your efforts

10   on the defendant's behalf over the last several years in

11   obtaining information from abroad, what I think I'd like to do

12   is get a status report from you about your efforts by

13   April 15th.  You can submit a letter.  For now, I will fix a

14   sentencing date of May 29, but depending upon what you report

15   to me, that date may well be adjourned.  But I think we should

16   have a going-forward date, and I'll set it down for May 29 at

17   11:00.

18          MS. CARVLIN:  Thank you, your Honor.

19          THE COURT:  And so I'm going to direct the government

20   to promptly provide a prosecution case summary to the probation

21   department.  And obviously, in view of your request,

22   Ms. Carvlin, I think you should get started with probation, but

23   I'm not going to require you to let them conduct that interview

24   within the next few weeks.  You can have them conduct that

25   interview in a month or two.  By then you may have some more

K1u1clap

1    information for them.

2            MS. CARVLIN:  Thank you.  I'll advise the probation

3    office of the schedule.

4            THE COURT:  Very well.

5            Are there any other matters that counsel wish to

6    raise?

7            MR. NEFF:  Could we just have one moment, your Honor.

8            THE COURT:  Yes.  Take your time.

9            MR. NEFF:  Thank you.

10            (Counsel conferring)

11            MS. CARVLIN:  Yes, your Honor.  One other matter.  I

12    would move to dismiss the motions that we filed, the motions to

13    suppress evidence, at this point as moot.

14            THE COURT:  All right.  The defendant's application is

15    granted.  I can only say that I and my law clerks have reviewed

16    all of those papers before we were alerted that an application

17    might be forthcoming in this case to change the plea.

18            MS. CARVLIN:  I'm sure that was a lot of work, your

19    Honor.

20            THE COURT:  Right.  But that comes with the position

21    that I hold.  So I'm not complaining.  In fact, I found the

22    briefing to be quite informative and engaging, given the

23    international scope of the transaction and the issues and the

24    searches that were conducted of servers in Iceland and

25    elsewhere.

1          MS. CARVLIN:  I can say, your Honor, it was

2     fascinating to write.

3          THE COURT:  All right.  Very well then.  This matter

4     is concluded.  Have a good afternoon.

5          MS. CARVLIN:  Thank you, your Honor.

6          MR. NEFF:  Thank you, Judge.

7          THE DEPUTY CLERK:  All rise.

8                              o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25