

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 5, 2021

**BY ECF AND EMAIL**

The Honorable William H. Pauley III
United States District Judge
Southern District of New York
500 Pearl Street
Daniel Patrick Moynihan U.S. Courthouse
New York, New York 10007

    Re:    *United States v. Roger Thomas Clark*, S2 15 Cr. 866 (WHP)

Dear Judge Pauley:

    The Government respectfully submits this brief reply letter in advance of sentencing in the above-captioned case, which is scheduled for April 20, 2021, at 9:00 a.m. In a letter dated March 30, 2021, the defense advanced arguments related to the defendant's health in custody and his ongoing recovery ▮▮▮▮▮▮▮▮▮▮. These are legitimate arguments for the Court to consider in imposing sentence. The Government itself generally took the defendant's health and age into account in extending a plea offer that capped his exposure at 20 years' imprisonment, where the Guidelines range would otherwise have been life imprisonment. Even with the defendant's recent health issues, however, the Stipulated Guidelines Sentence of 20 years' imprisonment remains entirely warranted for the array of reasons set forth in the Government's primary sentencing letter (Dkt. 64), some of which are highlighted below, including the defendant's leadership role in operating Silk Road, his orchestration of a murder-for-hire plot, and his obstruction of justice:

- <u>Silk Road's Purpose, Sophistication, and Scope</u>: Defendant Roger Thomas Clark and his co-conspirators operated a massive dark web marketplace that was specifically designed to facilitate the sale of contraband—such as drugs, guns, and computer hacking equipment—in a way that protected buyers and sellers. Silk Road offered the sale of nearly every illegal drug, including heroin, fentanyl, cocaine, crack, ecstasy, LSD, methamphetamine, and prescription pills such as oxycodone. Silk Road reached nearly every corner of the globe, lowering barriers to entry for many who might not have otherwise bought or sold drugs. And Silk Road was massive in scope; there were more than 1.5 million transactions, involving more than 115,000 buyer accounts and 3,000 seller accounts. These transactions had a total value of approximately $213 million, including more than $183 million in drug sales. The drugs sold on Silk Road included more than 82 kilograms of cocaine and 26 kilograms of heroin.

- <u>Silk Road Was Paradigm-Shifting</u>: Silk Road was the first site of its kind to combine various anonymizing technologies. Silk Road was therefore unprecedented, and its effects were both unfortunate and unsurprising, as Silk Road spawned various copycat marketplaces that continue to plague our society today.

- Clark's Pivotal Roles: For nearly two years, Clark partnered with Ross Ulbricht to operate Silk Road, culminating in Clark's part-ownership of Silk Road (according to Clark). During these nearly two years, Clark was involved in virtually every aspect of Silk Road, including working on technical development, identifying and addressing security vulnerabilities, hiring a computer programmer, promoting sales of contraband, devising rules and policies that governed Silk Road's users, conducting research on law enforcement's investigations of Silk Road, and urging violence to protect Silk Road. In other words, the Silk Road "brain trust" was only two men. As Clark admitted in his plea agreement, he was a leader or organizer of this sophisticated, harmful crime.

- Clark Urged A Murder: Clark advocated for, and facilitated, an attempted murder-for-hire of a Silk Road employee suspected of stealing $350,000 in Bitcoin from Silk Road. Clark's assessment of the situation was calm, cold-hearted, and nonchalant; he neither hesitated to kill, nor appeared to view the matter as worthy of much conversation. (In Clark's words: "*enough about the theft, tell me about the organ donor.*"; "*You would have surprised me if you had balked at taking the step, of bluntly, killing Curtis for fucking up just a wee bit too badly.*"; "*I'm perfectly comfortable with the decision, and I'll sleep like a lamb tonight, and every night hereafter.*"). For Clark, the decision to kill apparently was simple, straightforward, and stress-free. The excruciating consequences were others' problem. This is the mentality of a cold-blooded killer—a man willing to stop at nothing to protect the Silk Road empire. Indeed, perhaps nowhere was Clark's influence on Ulbricht more apparent than in Ulbricht's rapid transformation in how to handle this Bitcoin theft. *Before* messaging with Clark, Ulbricht's goal had been to get the suspected thief to return the stolen Bitcoin; *i.e.*, Ulbricht had money—not murder—in mind. Ulbricht even told someone else, "beat up [the thief] only if he doesn't comply i guess." Thus, some use of force was originally Ulbricht's option of last resort, if the Bitcoin were not returned. *After* messaging with Clark, though, Ulbricht promptly declared, "I would have no problem wasting this guy."

- Clark Was Undeterred: Ulbricht's arrest did not stop Clark's efforts to continue Silk Road. Rather, after Ulbricht was arrested, Clark asked a co-conspirator, "Tex," to take over Silk Road's operations. This was the response of a man determined to achieve his stated goals of "break[ing] drug prohibition" and "t[aking] down the DEA."

- Clark's Threat and Obstruction of Justice: During the offense, Clark threatened to hurt "Tex"'s wife if she reported Clark's and "Tex"'s involvement in Silk Road to the police. And even after Clark's arrest in Thailand, Clark obstructed justice by lying under oath during his extradition proceeding in Thailand. These were the actions of a man determined to evade the consequences of his misconduct.

Thus, viewed in context, Clark's arguments in favor of leniency pale in comparison to the severity of his offense, the duration of his offense, his pivotal roles in the offense, his use of violence, his use of threats, and his obstruction of justice. Clark displayed no respect whatsoever for the law, for court proceedings, or for others' wellbeing. Each of these appears to have been nothing, in Clark's mind, but an unimportant obstacle standing between him and his desired legacy: *"I want that whole ball of wax in my hands, so I can say I did that, I took down the DEA."*

Accordingly, for these reasons and those in our primary sentencing letter, the Government respectfully submits that the Stipulated Guidelines Sentence is fair and appropriate in this case.

          Respectfully submitted,

          AUDREY STRAUSS
          United States Attorney
          Southern District of New York

By: _____
          Michael D. Neff
          Vladislav Vainberg
          Assistant United States Attorneys
          (212) 637-2107/1029

cc:     Stephanie M. Carvlin, Esq. (by ECF and email)