Roger Clark
C/o Law Office Of Evan L. Lipton
250 West 55th Street, Floor 30
New York, New York 10019
ELL@EvanLiptonLaw.com

July 11, 2022

By ECF
Hon. Sidney H. Stein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312.

Re: *United States v. Roger Clark*, 15 Cr. 866 (SHS)

Dear Judge Stein:

     I am writing to you today to raise several issues pertaining to my sentencing in this matter, presently scheduled for September 27, 2022. I write from a nursing home in the greater New York area, where I am confined following a fall at the MDC on October 18, 2021; after which I was denied medical attention for more than 20 hours, while lying immobile and supine on the cell floor, in full view of officers. This act of cruelty unquestionably exacerbated and complicated the serious medical issues from which I now suffer. My present conditions of confinement make preparation for sentencing impossible. I am asking to have my legal materials returned to me, including a laptop that I had at the MDC, and to set a schedule for further submissions to the Court.

     I write with the assistance of my standby counsel, Evan Lipton, who is typing this letter. This is the only way that I can communicate with the Court. I continue to be arbitrarily denied a pen, a computer, a pen, a pad, and literally any other item. I am not permitted to have any of my legal papers. I am handcuffed and leg shackled to a bed in a small hospital room.

     Except for during legal visits, there are two guards seated about 3 or 4 feet from the foot of my bed. Even during these visits, the guards refuse to provide the

privacy that has been promised by the Marshals' Service, and ordered by Judge
Nathan, and is, of course, required under the 5th and 6th Amendments of the United
States Constitution. For example, a white noise machine which the Marshals' Service
agreed would be used during counsel's visits was taken by a guard, who said that they
were acting on orders from "the boss." (They had previously complained to me that
the machine would prevent them from being able to hear my privileged conversations;
in fact they told me they were required to monitor these conversations to report
anything "interesting" to the Marshals Service.) *See* ECF No. 111 (an order requiring the
United States Marshal Service to allow privileged communications with legal counsel;
this Order has never been complied with.)

Despite the close surveillance, and the chains linking me to the bed, I am being
treated as if I were an extreme security threat. In fact, these security procedures have
become more severe following my ongoing complaints and requests to be given my
most basic rights. This became clear on May 31, when I returned from Court and
found my legal papers spread about my hospital room/cell. Of note was a dark blue
binder that contained almost all of my handwritten notes and legal research, which
was empty, the complete contents - several hundred handwritten pages - having been
removed. My leg chains were adjusted so that I could not stand on the floor, and I was
handcuffed to the bed (I previously was connected to the bed by a five-foot chain
which allowed me to move about the room, and my hands were free.) When I
complained to a supervisor and manager about the theft of my documents, and
inability to access those that remained, I was told that this Court had given them
"carte blanche" to violate any and all of my rights as they desired, because this Court
had said my only remedy had been to sue when this is over. I am certain this is not
what the Court meant.

Things got worse when I was moved to a different facility on or about June 14.
My remaining privileged, legal and medical documents were brought along with me
and delivered with me to my room.  Within an hour, agents of the US Marshals' Service
dumped the documents on the floor, looked through them, and then took them all
away in five or six black garbage bags - about 15-20 thousand pages of documents,
including my few remaining handwritten notes, all my writing paper, and pens, leaving
me with absolutely nothing. Being chained to the bed and having my documents taken
away is clear retaliation for my exercise of my basic legal rights.  Agents told me this.
They also told that these measures, decreed by their supervisors, are not being
imposed on others who are being similarly held. Several of the agents have expressed

their willingness to testify to these facts.   I intend to provide the Court with additional examples once I have the ability to draft my own documents.

They have taken away my pen, and my pads to write on. I am denied access to any of my legal papers. I cannot read a book. I am not permitted to call my standby counsel, civil counsel, or Canadian consular officials. I cannot send or receive legal mail or consular mail, both of which are defined as "special mail" by BOP regulations.  I am literally within arms' reach of two armed guards, yet I am denied access to innocuous objects that I need for my defense. At the MDC where inmates have more liberty than I do to move about, they have access to all of these things and more, 24 hours a day. This doesn't make any sense.

If representing myself means anything, I must be given an opportunity to research and draft arguments to the Court, and to otherwise prepare for sentencing; and I must be given a meaningful amount of time to do it, free from arbitrary limits. Since my Court appearance on May 31, when I was granted pro se status, this letter is the only legal work I have been able to complete.

Last week, when Mr. Lipton visited me for the second time since he was appointed, he was kicked out of the room an hour after he arrived, for no reason. I was then told that I can only have legal visits for one hour per week. This may have been remedied - Mr. Lipton was permitted to stay for two hours today, but I am not convinced this will remain the case. I cannot make use of my legal advisor if I don't have sufficient access to him.  But even more importantly, I should not have to rely on him in order to put a pen to paper (or to review my legal files); that's not his role. I am aware that I could lose the right to represent myself if I do not comply with Court rules and deadlines. How can I comply with deadlines when I don't even have a pen? It is absurd and wrong.

Accordingly, I am asking Mr. Lipton to make several requests on my behalf. All of these things are necessary to enable me to communicate information necessary for you to determine a fair and just sentence.

(1)  I need my previously government supplied laptop computer, with the LexisNexis law library installed, and the four hard drives containing my discovery materials. I suggest that the laptop I had at the MDC can simply be transferred to this facility by being delivered to the United States Marshals Service.  According to LexisNexis, it would be "trivial" for the MDC to install the law library on my laptop. This library is available to MDC inmates 15 hours a day, 7 days a week on all inmate units. I am informed that the MDC can use the same license to put this on my laptop. This

laptop has been modified by the FBI crime lab to make it impossible for it to access the internet or any network (the networking chips and bluetooth chip have been removed, according to the assigned AUSA). The laptop computer should be stored in my room. There should not be any restrictions on the hours during which I may use it; to reiterate, I am under the watch of two guards 24 hours a day; any hour is like any other hour, so there should be no arbitrary limits on access to my computer and legal materials.

(2) Once I receive the legal materials noted in (1) above,  I request two weeks to submit a detailed proposed schedule for further submissions relevant to sentencing. This will be my first opportunity to use my pro se status. Among other issues I will address are objections to the previously filed Pre-sentence Report. (I do not adopt the objections made by prior counsel, which are incomplete. I further request an updated Presentence Report and reserve my right to make written objections to the updated report sufficiently prior to the sentence date.)

(3) I request that the officer who wrote the initial PSR meet with me at the nursing home so that she may observe my physical deterioration for inclusion in the updated report. I also request documentation of any medical assistive devices (such as a walker or items required for my physical rehabilitation) — I have been informed by BOP employees that I will not be permitted to bring these items to a BOP facility absent inclusion in the PSR.

If the Court has any questions for me, please forward to Mr. Lipton so that I may answer them in my submission.

Respectfully yours,

/s/ELL

Roger Clark